**Ernest Carl WALKER, Appellant,**

v.

**Ira M. COINER, Warden, West Virginia State Penitentiary, Appellee.**

No. 14759.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 31, 1972.

Decided Feb. 21, 1973.

Certiorari Dismissed June 25, 1973. See 93 S.Ct. 3072.

**888**

James H. McCauley (Court-appointed counsel), Belpre, Ohio, for appellant.

Richard E. Hardison, Asst. Atty. Gen. (Chauncey H. Browning, Jr., Atty. Gen., Willard A. Sullivan, Asst. Atty. Gen., on brief), for appellee.

Before WINTER, RUSSELL and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

The facts in this case are not in dispute. Appellant, Ernest Carl Walker, was indicted for armed robbery of the Public Finance Company in Charleston, West Virginia. On January 9, 1969, appellant was returned from the State of Florida to West Virginia for trial. Upon execution of a pauper's affidavit, counsel was appointed to represent him.

On June 9, 1969, appellant appeared with his counsel, asked the trial court's leave to file, and subsequently did file, a verified motion to quash the indictment and moved the court for an order authorizing the taking of the deposition of S. Dow Walker of Florida and authorizing reasonable expenses for such deposition. Appellant stated by affidavit that the Florida witness was necessary to corroborate his alibi defense. By order dated August 19, 1969, the trial court overruled the motion to quash and the motion to depose, at state's expense, the Florida witness.

Following a not guilty plea, appellant was found guilty in a trial by jury and sentenced to a term of forty years in the West Virginia State Penitentiary.

This appeal presents the following questions:

I. Was appellant denied effective assistance of counsel by the absence of his court appointed attorney at a hearing on the motion to quash the indictment?

II. Was appellant denied effective assistance of counsel by the trial court's refusal to provide funds for court-appointed counsel's use in interviewing and deposing appellant's non-resident alibi witness?

III. Was appellant denied due process by the prosecution's closing argument remark that the court could put appellant on probation?

I.

■ Appellant's first contention is without merit for the simple reason that the record shows that there was no hearing upon his motion to quash the indictment. In his brief, counsel for appellant states the following:

" . . . the record indicates that Appellant and his counsel jointly appeared before the trial court on June 9, 1969 and tendered and filed a veri-

fied motion to quash the indictment, and that the State was granted a period of time within which to reply thereto. It further appears that the State's reply was filed June 23, 1969. An August 19, 1969 court order overruled the motion to quash. *Apparently, no formal hearing was conducted by the Court, but it appears that the trial court considered and disposed of the motion to quash after both Counsel for Appellant and the State were given an opportunity to present their views on the motion."* [Emphasis added.]

Since there was no hearing, there was no place for appellant's attorney to be present. There is no constitutional requirement that a court have a formal hearing to announce a ruling on a written motion. We note that appellant's attorney presented this question on appeal pursuant to appellant's direction.

## II.

Appellant's second point, that he was denied effective assistance of counsel because the trial court would not order the taking, at state's expense, of the deposition of a non-resident witness, presents the most serious part of this appeal. Counsel's argument of the issue is somewhat novel in that he raises the question as one of effective assistance of counsel as well as equal protection of the law. However, for reasons which follow, we find it unnecessary to reach the issue in either form.

Appellant attacks the validity of § 62–3–1 of the West Virginia Code, which provides, in pertinent part, as follows:

"If any witness for the accused be a nonresident of the State, or absent therefrom in any service or employment, so that service of a subpoena cannot be had upon him in this State . . . the accused may present to the court . . . an affidavit showing such facts, and stating therein what he expects to prove by any such witness, his name, residence, or place of service or employment; and

if such court or judge be of the opinion that the evidence of any such witness . . . is necessary and material to the defense of the accused on his trial, an order may be made by such court or judge for the taking of the deposition of any such witness upon such notice to the prosecuting attorney . . . and in such order the court or judge may authorize the employment of counsel, practicing at or near the place where the deposition is to be taken, to cross-examine the witness on behalf of the State, the reasonable expense whereof shall be paid out of the treasury of the State."

. . .

The Supreme Court of Appeals of West Virginia has construed this statute so as not to authorize or require payment of public funds upon the motion of an accused to take the deposition of a non-resident witness. State v. Davis, 153 W.Va. 742, 172 S.E.2d 569 (1970). Appellant contends that because the statute would allow a defendant who could afford it an out of state deposition for his defense, yet deny the same to an indigent defendant, it is unconstitutional. It is, however, unnecessary to reach this question, because an alternative means of securing the attendance of appellant's alibi witness was readily available.

Prior to 1931, there existed no means by which a state court could compel the attendance of a witness from outside the state. Cf. Minder v. Georgia, 183 U.S. 559, 22 S.Ct. 224, 46 L.Ed. 328 (1901); Annot., 44 A.L.R.2d 732; Comment, 29 Wash. & Lee L.Rev. 383 (1972). To remedy this situation, the National Conference of Commissioners on Uniform State Laws adopted the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Cases. (Amended in 1936 as "Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings.") At least forty-five states have adopted the act, including the jurisdictions involved in this case. Fla. Stat.Ann. § 942.01; West Va.Code Ann. § 62–6A–1; Vol. 9, Uniform Laws Ann.; 29 Wash. & L.Rev. 383.

▮ The act applies in each of two states which have adopted it such as Florida and West Virginia. To utilize the statute, an application is made to the judge of the court in which the prosecution is pending. If the judge finds that the requested witness is material, he issues a certificate so stating. The certificate is then presented to a judge of a court of record in the county in which the witness is found. That judge then issues a summons for the witness to appear and holds a hearing to determine if the witness is material and necessary. If he so finds, he issues an order directing the witness to attend and testify in the court where the prosecution is pending. The witness then must attend after being tendered the specified statutory fee or else be subject to punishment as if he had violated a summons to appear before a court of record in his own state. Concerning payment, the uniform act expressly provides:

> "If the witness is summoned to attend and testify in this State he shall be tendered the sum of ten cents a mile for each mile by the ordinary traveled route to and from the court where the prosecution is pending, and five dollars for each day that he is required to travel and attend as a witness."

The statute is silent as to when the payment must be made or who must make it. The act contains another payment provision which is worded slightly differently. "If the witness, who is summoned as above provided, after being paid or tendered by some properly authorized person the sum of ten cents a mile, etc., . . . fails to attend . . . he shall be punished in the manner provided for the punishment of any witness who disobeys a summons issued from a court of record in this state." It is apparent that someone in the requesting state must furnish funds to tender the witness the statutory fee. The tender is obviously made through the authorities in the state where the witness is found. In any event, before the witness can be compelled to attend, the statutory fee must be tendered. The

statutory question of the source of the money for the fee has not been judicially commented upon in West Virginia. There are several cases as collected in the note in 44 A.L.R.2d 732 arising from other jurisdictions which have decided that the act does not require the state to pay the expenses. See State v. Hemmenway, 80 S.D. 153, 120 N.W.2d 561; State v. Blount, 200 Or. 35, 264 P. 2d 419 (1953); State v. Swenson, 243 Minn. 24, 66 N.W.2d 1 (1954); Vore v. State, 158 Neb. 222, 63 N.W.2d 141 (1954); State v. Fouquette, 67 Nev. 505, 221 P.2d 404, cert. den. 341 U.S. 932, 71 S.Ct. 799, 95 L.Ed. 1361 (1950). But see Preston v. Blackledge, 332 F. Supp. 681 (E.D.N.C.1971). However, we are advised in a supplemental memorandum by the Attorney General that it is the custom and practice in West Virginia, in the case of an indigent defendant who desires to secure a non-resident witness, for the County Court of the particular county in which the defendant is to be tried to tender the money to the witness. The County Court is then reimbursed by the State Auditor out of what is known as the Criminal Charges Fund. A readily available method existed whereby appellant could have secured his witness which was not more onerous than the basis for invoking the statute to take the deposition of the absent witness. Accordingly, we see no need to unnecessarily question the validity of the West Virginia statute authorizing depositions from non-resident witnesses and are of opinion there is no merit to appellant's second contention in the posture presented to us in this appeal.

## III.

▮ Appellant's third contention, that he was denied due process of law because of a remark made by the prosecutor, arises from the following facts: During closing argument to the jury, defense counsel stated that appellant had already spent ten or eleven months in jail. In rebuttal, the prosecution stated by way of explanation that there had been a lot of continuances for which the

defendant was responsible and that sentencing was for the court anyway. The exact language was:

"And it is not up to you all to determine the amount of punishment if this man is found guilty. That is up to the Court, he can put him on probation if he wants, or send him to the penitentiary; but that is the court's job."

No objection was made by defense counsel and there was no request for a curative instruction. Defense counsel invited the remarks in his closing argument, and the objection now comes rather late to warrant serious consideration. In any event, we agree with the district court's determination that, while the statement may have been an inaccurate portrayal of state law, the remark had the effect of reminding the jury that sentencing is for the judge, not the jury. The error, if it be such at all, was purely one of state law not rising to constitutional dimensions cognizable at this stage of review. Grundler v. North Carolina, 283 F.2d 798 (4th Cir. 1960).

For the foregoing reasons, the opinion of the district court is

Affirmed.