87 N.J. Super. 98 (1965)
208 A.2d 171
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DANIEL SMITH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 1, 1965.
Decided March 17, 1965.
*100 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. Jack Pincus argued the cause for appellant (Messrs. Pincus, Shamy and Sheehan, attorneys).
Mr. Raymond R. Trombadore, Assistant Prosecutor, argued the cause for respondent (Mr. Arthur S. Meredith, County Prosecutor of Somerset County, attorney).
The opinion of the court was delivered by KILKENNY, J.A.D.
Defendant was found guilty by a jury in the Somerset County Court of unlawfully receiving *101 stolen property of the value of $133.50, well knowing the same to have been stolen, in violation of N.J.S. 2A:139-1. In appealing his judgment of conviction, defendant contends solely that the trial judge erroneously denied his application, made pursuant to N.J.S. 2A:81-20, for a certificate to compel the attendance at his trial of an alleged out-of-state witness.
The indictment, returned by the grand jury on May 22, 1964, charged defendant with having committed the offense on or about March 26, 1964. Defendant pleaded "not guilty" on May 29, 1964. Trial was set for June 8, 1964. However, the case was not reached for trial until the afternoon of June 10, 1964. When trial of the case was about to commence, defendant's attorney, for the first time, applied to the trial judge to issue a certificate, in accordance with N.J.S. 2A:81-20, directed to the County Court of Luzerne County, Pennsylvania, to compel the appearance of one Lawrence Sabol, otherwise known as Lance Sabol, "who resides in Royer Run, Pennsylvania," as a witness for defendant. Defense counsel represented to the trial judge that defendant had been looking for this witness, but had not been able to locate him "until the last forty-eight hours."
The prosecutor opposed issuance of the requested certificate, pointing out that "based on the experience we have had in following this procedure, it would take at least a week to compel the presence of such a witness and possibly more in the event there is a request for assignment of counsel, and preparation of facts and full hearing in a foreign jurisdiction."
Thereupon, the trial judge took defendant's testimony to determine the merits of the application. Defendant testified that he required the presence of Sabol for his defense, but did not specify at this preliminary hearing what testimony, if any, Sabol would give that might help him. Defendant stated that he had been making inquiries since the indictment to locate Sabol "down to the Shore where him and I worked in a project," and first found a clue to Sabol's actual location *102 when "I was told last Saturday that he may be up Royer Run, Pennsylvania, where he is supposed to be from. I went up there Monday. * * * I talked to him in the bar. I asked him to come down and help me out. * * * he wouldn't come down."
In answer to questions by the trial judge, defendant stated that he had gone down to the Shore  Lakewood, Toms River, Asbury Park  "several times," looking for Sabol, and it was only on the preceding Saturday that he went to "Wilkes Barre," because he "didn't know where Royer Run was." When asked how he had obtained the name of that town, he answered:
"We were talking in a bar. I asked if anybody remembers this fellow, remembers where he was from. One fellow said, `Royer Run, Pennsylvania.'"
And then, according to defendant, he went to "Wilkes Barre."
In ruling against defendant's application for the certificate, the trial court stated:
"The statute, apparently is permissive, not mandatory. I do not believe that the defendant made the necessary investigation to determine where this man was. I think the application is made merely to delay the proceedings, and it will be denied."
Thereupon, the trial proceeded and, as noted above, defendant was found guilty.
Defendant refers us to Article I, paragraph 10, New Jersey Constitution (1947), which provides, so far as pertinent here:
"In all criminal prosecutions the accused shall have the right * * * to have compulsory process for obtaining witnesses in his favor; * * *."
However, this constitutional right does not obligate the State to compel the attendance of witnesses who cannot be located within its jurisdiction. Minder v. State of Georgia, 183 U.S. 559, 22 S.Ct. 224, 46 L.Ed. 328 (1902). Nor does the right *103 amount to a guarantee by the State that witnesses requested by the accused will be produced at the trial. The right relates only to the issuance of compulsory process. State v. Jones, 57 N.J. Super. 260, 267 (App. Div. 1959).
N.J.S. 2A:81-20 does provide a statutory means whereby a witness from another state can be compelled to attend and testify at a criminal trial in our State. The remedy is equally available to the State and the defendant. In re Cooper, 127 N.J.L. 312, 313 (Sup. Ct. 1941); In re Saperstein, 30 N.J. Super. 373 (App. Div. 1954). We are not concerned herein with the requirement of N.J.S. 2A:81-20 that the person whose compulsory attendance at a criminal trial in New Jersey is being sought must be in a state "which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions." Pennsylvania has adopted the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. 19 P.S., §§ 622.1-622.7. See, too, United States v. Monjar, 154 F.2d 954 (3 Cir. 1946).
To obtain the relief provided for in N.J.S. 2A:81-20, defendant had the burden of establishing that Sabol was a "material witness." This required, at the preliminary hearing upon his application, a showing that not only would Sabol testify favorably in his behalf, but also that such testimony would be material to his defense. In re Cooper, 127 N.J.L. 312 (Sup. Ct. 1941); State v. Fouquette, 67 Nev. 505, 221 P.2d 404, 410 (1950), certiorari denied 341 U.S. 932, 71 S.Ct. 799, 95 L.Ed. 1361 (1951); Application of Stamler, 279 App. Div. 908, 111 N.Y.S.2d 313 (App. Div. 1952); Application of State of Washington, 10 App. Div.2d 691, 198 N.Y.S.2d 313 (App. Div. 1952); State v. Blount, 200 Or. 35, 264 P.2d 419 (1953), certiorari denied 347 U.S. 962, 74 S.Ct. 711, 98 L.Ed. 1105 (1954); People v. Newville, 220 Cal. App.2d 267, 33 Cal. Rptr. 816 (D. Ct. App. 1963); Annotation 44 A.L.R.2d 732 (1955).
The State made no concession at the preliminary hearing that Sabol was a material witness, and defendant failed to *104 prove this crucial fact. The mere unsupported conclusory oral statements by defendant's attorney, that Sabol resided "in Royer Run, Pennsylvania" and that he was "the person from whom he [defendant] acquired or allegedly acquired the goods which are the subject matter of the complaint or indictment," were a legally and factually insufficient showing that Sabol was a nonresident material witness who would give favorable and material testimony in aid of defendant. There was no representation, on the application for the certificate, as to what testimony, if any, Sabol would give, were he produced as a witness. On the issue of whether Sabol was a material witness, defendant's testimony was limited to the following single question and answer:
"Q. In connection with the preparation of your defense, do you require the presence of Lawrence Sabol?
A. Yes, sir."
Here again, we have only a naked general conclusion. This was not an adequate showing for issuance of the requested certificate.
Defendant argues that the trial judge made no express ruling as to whether the testimony sought to be produced would be material, but based his decision solely upon his finding that he did "not believe that the defendant made the necessary investigation to determine where this man was." It is true that the trial judge did not state as one of the reasons for denying the application that there was no showing that Sabol was a "material witness." However, he might have done so on the basis of the proofs adduced at the preliminary hearing. Our concern is not so much with the trial court's reasons for its decision but rather with the correctness of the decision itself. The trial judge's expressed disbelief of defendant, and his finding that "the application is made merely to delay the proceedings," were adequate reasons for denying the application. Lack of the necessary showing that Sabol was a "material witness" further justifies the ruling. Midgett v. State, 223 Md. 282, 164 A.2d 526, 536 (Ct. App. *105 1960), certiorari denied 365 U.S. 853, 81 S.Ct. 819, 5 L.Ed.2d 817 (1961).
There was still another valid reason why defendant's application was properly denied. He never specified, with any reasonable degree of certainty, where Sabol might be found. The general reference to "Royer Run, Pennsylvania," without any designation of where the witness might be found therein, was not enough. There was not even a specification of the location of the "bar" in which defendant allegedly spoke with Sabol, or of the "bar" where defendant allegedly obtained his first clue. "The right to compulsory process does not include the right to have the state locate the witnesses." Lancaster v. Green, 175 Ohio St. 203, 192 N.E.2d 776, 778 (Sup. Ct. 1963). The effectiveness of the uniform act requires cooperation between the states, and "clearly the accused must be able to designate the witness and his location with exactitude before any duty devolves on the court to initiate the complex judicial process necessary under these acts to procure the attendance of out-of-state witnesses." Ibid.
This absence of specificity as to where Sabol might be found was further highlighted by the testimony at trial. Defendant testified at the trial itself as to his alleged transaction with Sabol. Detective Vincent Metzler testified for the State in rebuttal that his personal investigation of the matter indicated that no town named "Royer Run" existed in the State of Pennsylvania and that no person named Lawrence or Lance Sabol could be found located in the area in which defendant claimed to have talked with him. Defendant has never come forward with any proof that "Royer Run" was an actually existing town in Luzerne County, Pennsylvania, when he applied for the certificate under N.J.S. 2A:81-20, or that Sabol could then have been found at any specific location therein.
The granting of trial adjournments rests within the sound discretion of the trial court. Absent an abuse of discretion, denial of a request for an adjournment does not constitute reversible error. State v. (Frank R.) Smith, 66 *106 N.J. Super. 465, 468 (App. Div. 1961), affirmed 36 N.J. 307 (1962); State v. Gallo, 128 N.J.L. 172 (Sup. Ct. 1942), affirmed o.b. 129 N.J.L. 52 (E. & A. 1942). We find no such abuse of discretion in the instant case. On the contrary, the trial court was justified in denying further delay of the trial, based upon all the circumstances herein as revealed by the record before us. See Adame v. State, 372 S.W.2d 545 (Tex. Ct. Crim. App. 1963).
The judgment of conviction is affirmed.